UNITED STATES, Appellee,

v.

Robert A. WOODS, Hospitalman, U.S.
Navy, Appellant.

Misc. Dkt. No. 89–10.

NMCM 883617 M.

U.S. Court of Military Appeals.

July 3, 1989.

For Appellant: *Lieutenant John L. Staley, JAGC, USNR* (argued).

For Appellee: *Lieutenant Sigurd R. Peterson, Jr., JAGC, USNR* (argued); *Captain Wendell A. Kjos, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

The accused is pending trial before a general court-martial on the following charge and specification:

Charge: Violation of the UCMJ, Article 134[, 10 USC § 934].

Specification: In that Hospitalman Robert A. Woods, U.S. Navy, Naval Medical Clinic, Norfolk, Virginia, on active duty, in or around Virginia Beach, Virginia, sometime between 14–28 November 1987, then knowing that his seminal fluid contained a deadly virus (Human T-cell Lymphotropic Virus 3) capable of being transmitted sexually, and having been counseled regarding infecting others, an act that he knew was inherently dangerous to others, and that death or great bodily harm was a probable consequence of the act, and that was an act showing wanton disregard of human life, did engage in unprotected (without the utilization of a condom or other device to protect the partner from contamination) sexual intercourse with Seaman [C——,] U.S. Navy, such conduct being prejudicial to the good order and discipline in the Armed Forces.

Upon his arraignment, the accused timely moved to dismiss the charge. The mili-

tary judge dismissed the charge and specification on the grounds that the specification failed to allege any general words of criminality or to allege that the accused did not notify Seaman "C" of his infection. For these reasons, the judge concluded that the specification failed to state an offense under Articles 80–134, Uniform Code of Military Justice, 10 USC §§ 880–934, respectively. The Government appealed this dismissal to the Court of Military Review pursuant to the provisions of Article 62, UCMJ, 10 USC § 862.

■ The Court of Military Review reversed the military judge and ordered the case returned to the general court-martial for trial, holding "that the gravamen of this offense is the accused's reckless conduct in having unprotected sexual relations with another," and that "[i]n this case, the Government has alleged that appellant knew that by having 'unprotected' sexual intercourse, he would be engaging in an act inherently dangerous to others, and that death or great bodily harm was a probable consequence of that act."[1] Thus, the Government's failure to allege that the accused failed to notify Seaman C of his infection did not invalidate the specification. In the posture of the case, the court did not reach the question of whether the victim's consent would constitute a defense. 27 MJ 749, 753 (1988).

■ Timely appeal was taken to this Court on the question of the adequacy of the specification. After careful consideration of the arguments of the parties, both on brief and orally before this Court, we uphold the decision of the Court of Military Review.

Article 134 provides:

Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

The test for whether a specific act might fall within this broad proscription is "whether the act was palpably and directly prejudicial to the good order and discipline of the service—this notwithstanding that the act was not otherwise denounced." *United States v. Sadinsky*, 14 USCMA 563, 566, 34 CMR 343, 346 (1964). Further, an accused must be on "fair notice from the language of ... [the] article that the particular conduct which he engaged in was punishable." *Parker v. Levy*, 417 U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974).

Here, the Government has alleged:

1. That the accused knew "that his seminal fluid contained a deadly virus (Human T-cell Lymphotropic Virus 3) capable of being transmitted sexually";

2. That he had "been counseled regarding infecting others";

3. "[T]hat he knew [his conduct] was inherently dangerous to others, and that death or great bodily harm was a probable consequence of the act";

4. That he "did engage in unprotected ... sexual intercourse with" a fellow Navy servicemember; and

5. That "such conduct ... [was] prejudicial to the good order and discipline in the Armed Forces."

We agree that, if these allegations are established, a factfinder could properly find that the conduct "was palpably and directly prejudicial to good order and discipline of the service." *United States v. Sadinsky, supra* at 566, 34 CMR at 346. The military and society at large have a compelling interest in having those who defend the na-

---

1. We agree with the Court of Military Review that "the better practice would have been to employ more traditional words of criminality to this allegation, such as 'wrongfully' or 'unlaw- fully', to characterize the conduct." *United States v. Woods*, 27 MJ 749, 751 (NMCMR 1988)(footnote omitted).

tion remain healthy and capable of performing their duty. *See National Treasury Employees Union v. Von Raab,* — U.S. —, 109 S.Ct. 1384, 1396, 103 L.Ed.2d 685 (1989). Further, a member of the armed forces has Article 134 "carefully explained" to him or her on initial "entrance on active duty" and "again after he [or she] has completed six months of" service. Art. 137, UCMJ, 10 USC § 937. Thus, a military member is on "fair notice" that conduct which is prejudicial to good order and discipline is punishable. Finally, it will be incumbent on the Government to show, as alleged in the specification, that appellant was also put on "fair notice" of the considerable consequences of the alleged act by the "counsel[ing]" he received regarding sexual activity.

2. We do not here decide whether the knowing and willful transmission of a deadly, infectious disease may constitute the basis for other offenses under the Code. *See United States v. Woods,* 27 MJ at 752 n.5. Our analysis is limited to the *elements* of the offense alleged and whether the allegations, if proved, would establish the necessary *elements* of an offense. Also, we do not decide whether a "safe-sex" order would be properly enforced as a violation of

As noted by the Court of Military Review, the essence of the specification, hence its criminality, is that the accused engaged in sexual intercourse with another, knowing that to do so without protection was an "inherently dangerous" act likely leading to "death or great bodily harm," and that under the circumstances his conduct was "prejudicial to the good order and discipline in the Armed Forces." We hold that such a specification is sufficient to state an offense under Article 134.[2]

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

either a direct or general lawful order. *United States v. Wartsbaugh,* 21 USCMA 535, 541, 45 CMR 309, 315 (1972). We also do not decide what the maximum punishment would be, this being best left to the development of the facts to determine which offense the conduct alleged is "closely related to" in subparagraph e of paragraphs 3–59, 61–113, Part IV, Manual for Courts–Martial, United States, 1984. *See* RCM 1003(c)(1)(B), Manual, *supra.*