UNITED STATES, Appellee,

v.

Private E2 Carey E. GIBSON, 527–65–3831, United States Army, Appellant.

ACMR 9301062.

U.S. Army Court of Military Review.

3 May 1994.

---

For Appellant: Major Michael A. Egan, JAGC, Captain Christopher W. Royer, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Major Joseph C. Swetnam, JAGC, Captain Glenn L. Kirschner, JAGC (on brief).

Before GRAVELLE, JOHNSTON, and BAKER, Appellate Military Judges.

## OPINION OF THE COURT

BAKER, Judge:

Pursuant to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of failure to obey a lawful general regulation, damaging military property through neglect, and aggravated assault, in violation of Articles 92, 108, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 908, and 928 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a bad-conduct discharge, confinement for 27 months, forfeiture of $360.00 pay per month for 27 months, and reduction to Private E1.

In the first of two assertions of error, the appellant contends that the military judge erred by accepting his plea of guilty to aggravated assault because insufficient facts were elicited to constitute the offense of aggravated assault through culpable negligence. After carefully reviewing both the stipulation of fact and the testimony elicited from the appellant during the providence inquiry, we disagree.

The charges in this case stem from a horrific incident at Fort Knox, Kentucky. The appellant, a cavalry scout with four years of military service, intentionally dropped what was later determined to be a 40 millimeter high-explosive grenade round in a military vehicle parking area (motor park). The ensuing blast injured thirteen soldiers, including the appellant. Four soldiers were severely injured. Notwithstanding their rapid helicopter evacuation to Humana Hospital in Louisville, two of the four almost died. A military vehicle parked nearby was also damaged.

During the providence inquiry, the appellant revealed that he had kicked an "object" out of a pothole on his way to a unit formation. After it stopped spinning, he picked it up, not "paying attention all that much to what [he] was doing." He did remember that the object "looked like a bullet, something like a bullet." During further inquiry he variously indicated that he "believed" he recognized the device as an explosive dud [1] before he dropped it and that he "should have known it was a dud or an explosive device." He admitted that he had received training in the handling of explosive devices and knew not to handle duds. He also admitted that he had violated United States Army Armor Center Regulation 210–2 by handling a known or suspected explosive dud.

 A guilty plea is not provident unless an accused is willing to admit each and every essential element of the offense to which he enters a plea of guilty. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969); *United States v. Stener*, 14 M.J. 972 (A.C.M.R.1982). "The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." Rule for Courts–Martial 910(e). The providence inquiry must demonstrate that the accused believes he is guilty and that his understanding of the facts supports the objective conclusion that he is guilty. *Care*, 40 C.M.R. at 247; *United States v. Campos*, 37 M.J. 1110 (N.M.C.M.R. 1993). In order for a plea of guilty to be set aside on appeal, the record must contain some "evidence in 'substantial conflict' with" the plea of guilty. *United States v. Stewart*, 29 M.J. 92 (C.M.A.1989), citing *United States v. Hebert*, 1 M.J. 84, 86 (C.M.A.1975). *See*

---

1. "A dud is any explosive munition such as a fuze, projectile, grenade, or artillery simulator or mine which has been fired from a weapon or otherwise activated and failed to detonate." USAARMC Reg. 385–22, para. 3–5a (6 May 1985).

*also United States v. Gallion,* 36 M.J. 950, 952 (A.C.M.R.1993).

The appellant was charged with assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm—the lesser of two forms of aggravated assault included in Article 128, UCMJ. Specifically, the government alleged that the appellant committed an assault upon 12 named soldiers by "intentionally dropping an explosive device, to wit: a 40 millimeter grenade round ... on the ground within a thirty foot radius of [the soldiers], and thus causing it to explode with a force likely to produce death or grievous bodily harm."

■ Assault with a means or force likely to produce death or grievous bodily harm requires proof of attempt or offer to do bodily harm or actual infliction of bodily harm. Manual for Courts–Martial, United States, 1984, Part IV, para. 54b(4)(a)(i) [hereinafter MCM, 1984]. Two of these alternatives can be ruled out in the case at bar. Attempt requires a specific intent to inflict bodily harm, which the appellant never admitted. And, for whatever reason, the specification fails to allege that the appellant actually harmed his victims.[2] This leaves assault by offer as the remaining offense.

"An 'offer' type assault is an unlawful demonstration of violence, either by an intentional or by a culpably negligent act or omission, which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm. Specific intent to inflict bodily harm is not required." MCM, 1984, Part IV, para. 54c(1)(b)(ii).

■ In a stipulation of fact and during the providence inquiry the appellant acknowledged that his acts created a reasonable apprehension of immediate bodily harm in others. Two of the victims recognized the object as a dangerous explosive device and were "terrified" when they saw the appellant approach tossing the "hot" round from hand to hand—even before he dropped it. It is reasonable to infer that the remaining vic-tims apprehended bodily harm after hearing and sensing the explosion, as proximately caused by the appellant's handling and dropping the grenade round.

During the providence inquiry, the appellant readily admitted that he intentionally dropped the grenade round. However, he admitted neither intent to harm nor intent to create an apprehension of harm. Accordingly, the military judge focused on culpable negligence.

Culpable negligence is "a degree of carelessness greater than simple negligence. It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission." MCM, 1984, Part IV, para. 44c(2)(a)(i). The U.S. Court of Military Appeals has defined culpable negligence as "conduct [that is] reckless and in wanton disregard of the rights of [others]." *See United States v. Riggleman,* 3 C.M.R. 70, 75 (C.M.A.1952). "Culpable negligence is higher in magnitude than simple inadvertence, but falls short of intentional wrong." *Id.* at 73. "The actor need not actually intend or foresee those consequences: it is only necessary that a reasonable person in such circumstances would have realized the substantial and unjustified danger created by his act." *United States v. Baker,* 24 M.J. 354, 356 (C.M.A. 1987). *See also United States v. Henderson,* 23 M.J. 77 (C.M.A.1986); *United States v. Brown,* 22 M.J. 448 (C.M.A.1986).

We view the appellant's conduct as analogous to that of an individual who points a firearm he thinks is unloaded at someone and playfully pulls the trigger, only to have it discharge. In similar circumstances in *United States v. Redding,* 14 U.S.C.M.A. 242, 34 C.M.R. 22 (1963), the accused shot a fellow soldier and the Court of Military Appeals affirmed the conviction of assault with a dangerous weapon. Because that case involved a dangerous weapon and satisfied two of the three alternatives for proof (offer to do and actual infliction of bodily harm), it was less

2. The military judge did not recognize this distinction and treated the appellant's plea as a plea to battery. This resulted in an inquiry on "bodily harm" as an element. Although unnecessary from a proof perspective, this was not prejudicial since bodily harm was relevant to both the degree of force involved and the appellant's culpability. In addition, bodily harm was clearly an aggravating circumstance in this case.

tenuous than ours. However, the critical issue was the same—whether the accused's actions were culpably negligent.

Both the shooter and his victim in *Redding* described the incident as an "accident" (as did the appellant in this case). The court found that:

> the bullet wound [the victim] suffered could be attributed by the triers of fact to accused's careless acts and omissions in indulging in a game with an *instrument of known dangerous capability* while facing his friend and within five feet of him, in culpable and reckless disregard of the foreseeable consequences that actually resulted....

*Redding*, 34 C.M.R. at 25 (emphasis added).

In a colloquy with the military judge the appellant indicated, "[t]he reason I think it's culpable negligence, sir, is because when I dropped it it hurt several people around me and if I would have known—if I would have known what it was and not touched it, then it would have never happened, sir." The acknowledgement of "but for" causation was not enough to establish culpability. However, it was not necessary for the appellant to admit that he personally *knew* the bullet-shaped object was dangerous in some absolute sense. By acknowledging that two fellow soldiers with similar experience and training immediately recognized the object for what it was and that he *should have* recognized it, he essentially agreed that a *reasonable person* in *these circumstances* would have realized the substantial and unjustified danger created by dropping it. The consequences of the appellant's act—apprehension of death or great bodily harm by twelve other soldiers—were foreseeable by a *reasonable person*. The providence inquiry was more than sufficient to establish both that the appellant believes he is guilty and that his understanding of the facts supports the objective conclusion that he is guilty. The military judge did not err in accepting the plea.

The remaining assertion of error was resolved against the appellant in *Weiss v. United States*, — U.S. —, 114 S.Ct. 752, 127 L.Ed.2d 1 (U.S.1994).

The findings of guilty and the sentence are affirmed.

Senior Judge GRAVELLE and Judge JOHNSTON concur.